Madam Clerk, please call the next case. Ordering 09-0081, Court of the State of Illinois, Appellant Jessica Bargeman v. Dolores Henry, Appellee Brian Hammer. Ms. Bargeman? Is it Bargeman or Bargeman? Bargeman. Bargeman. You may proceed. May it please the Court. Counsel, my name is Jessica Bargeman and I am here today on behalf of the people of Illinois. On April 11, 2008, the defendant struck and injured a construction flagger with a motor vehicle. The defendant was arrested at the scene and issued citations for failure to yield to a flagger in a construction zone, reckless conduct, and driving with a suspended license. Pursuant to Section 501.6 of the Illinois Vehicle Code, a state trooper took the defendant to Illinois Valley Community Hospital where he requested a non-consensual blood and urine draw. The blood and urine samples were collected by a trained and licensed female phlebotomist. As a result of the urine toxicology testing, the defendant was indicted for aggravated driving under the influence of alcohol. Following a hearing on a motion to suppress, the results of the urine test were suppressed, and that is what the people are now appealing. The standard review for a motion to suppress in two parts. First, the factual findings will only be reversed if they are against the manifest weight of the evidence, whereas the trial judge's ruling on whether suppression is warranted is reviewed using a de novo standard review. This case also involves issues of statutory and regulatory construction, which are also reviewed under de novo standard review. So it's a mixed question of law and fact? Yes, Your Honor. The issue before the court today is whether the trained and licensed female phlebotomist was authorized to collect the defendant's urine sample. The trial judge said she was not. However, the people submit that the trial judge confused the language in Sections 501.6, 501.1, and 501.2 of the Illinois Vehicle Code, and erred in finding that the phlebotomist was not authorized to collect the defendant's urine. Section 501.6a says that any person who drives and has been involved in a personal injury motor vehicle accident shall be deemed to have given consent to chemical testing of their blood, breath, or urine if they have been arrested for any violation of the Illinois Vehicle Code,  Compliance with Section 501.6 does not relieve such a person from the requirements of Section 11501.1. Section 501.6 does not contain any requirement regarding who shall collect the defendant's urine sample. And while the last sentence in Section 501.6a refers to Section 501.1, the trial judge's determination that he must consider that section in his analysis was errored. The statute's reference to 501.1 does not mean that it applies in the present case. It only means that a driver who has been involved in a personal injury motor vehicle accident and has been deemed to have given consent to chemical testing under Section 501.6 is still subject to statutory summary suspension. There is no evidence in the record where the defendant's case involves a statutory summary suspension. Therefore, Section 501.1 is not relevant to the analysis, and the trial judge erred in considering that it was. As acknowledged in our brief, this argument was not raised below, and the people referred to People v. Collins, a 2nd District 1998 case, in asking this court to consider the merits of that argument in the interest of justice. This is a case of first impression, and it is important that Section 501.6 be interpreted correctly. The people submit that the trial judge also erred in finding that Section 501.2 restricts who is authorized to collect the defendant's urine. The statute says that evidence of the defendant's blood alcohol concentration is admissible at trial. It says nothing about how or who must collect the defendant's sample. Section 501.2a.1 limits who may perform chemical analysis on a subject's blood, urine, or breath. It does not limit who may collect urine. Subsection a.2 restricts who is authorized to withdraw blood. It does not restrict who is authorized to collect urine. In fact, Subsection a.2 specifically says that this limitation shall not apply to the taking of urine specimens. Given the plain language of Statute 501.2, the trial judge erred when he concluded that Section 501.2 applies to urine collection and that the phlebotomist's collection of the defendant's urine violated that section. Clearly, Sections 501.6, 501.1, and 501.2 do not limit who can collect a defendant's urine sample, and neither does the administrative code, for the Department of State Police was not authorized to promulgate any rules or regulations regarding urine collection. According to People v. Olson, which is a 2009 Second District case, only Section 501.2 of the vehicle code authorizes promulgation of rules for Part 1286 of the administrative code, not Section 501.6, the only applicable statute in this case. And even then, Section 501.2 authorizes the Department of State Police to develop standards only for the chemical testing of blood, breath, and urine samples. People submit that the Department exceeded its statutory authority in passing regulations on urine collection, and thus the trial judge erred in finding that the administrative code was violated. Again, the People acknowledge this argument was not raised below, and we would again cite to People v. Collins, the issue is very important because it concerns whether there is legislative authority for Section 1286.330 of Title 20 of the administrative code. Well, the defendant here was issued a uniform traffic ticket, am I correct? Yes, Your Honor, she was issued three different citations. And that has to be prior to the attestment, or drawing, or collection? Yes, right, and she was arrested and issued those citations on the scene. Good. If this Court should find that Section 1286.330 is the controlling law on urine collection, the People submit that the regulation regarding who may collect urine is merely directory. The regulation says that the following procedures shall be used to obtain a urine sample. And then it goes on to say, subsection b, a urine sample may be collected by the arresting officer, another law enforcement officer, any agency employee, or a hospital nurse who can authenticate the sample. Those persons must be of the same sex as the subject. Clearly, the regulation is directory. First, it fails to list what the result is for noncompliance, which is required for mandatory regulations. And second, the use of the term shall in the first paragraph, and may in subsection b, shows that the Director of State Police knew the difference between the terms, he knew their legal consequences, and he intended that section b be directory. How controlling is an administrative code for provision to a court interpreting the statute when there seems to be what I guess simply the code drops a reference to phlebotomists, doesn't it? That's correct, Your Honor. How controlling is that regulation? Well, first we submit that there is no authority to even pass that, and therefore, in fact, the Director of State Police did not even have the statutory authority to pass that regulation, so it would not be controlling at all. Because only 501.2 gives him the authorization? Correct. And can he not assume that the authority also flows from the other statutory sections? My understanding is that a legislature needs to specifically grant an executive body the authority to pass a certain regulation or to implement a certain law. And people will be also in stance for a proposition that of a certain listed statute, only 501.2, because it contains a specific provision mentioning the State Police, authorizes the police to pass those regulations. And even then, that provision was only to implement that specific section, which had to do with chemical testing or analysis of blood, breath, or urine. And this case is entirely different. It is who is authorized to collect urine. And finally... I know both of you touched that subject in your briefs, but do you have any case law or authority for that position? That the regulations can only be issued by the specific statutory authority within the statute? The people referred to the newest case, people of the Olson 2nd District decided this just this year. And they said specifically that. That of any of the statutes that were listed under the administrative code, only 501.2 arguably could even grant the department the authority to pass those regulations. And finally, the people would submit, even if this court finds that the administrative code applies, that the regulation was mandatory and that it was violated, the trial judge still erred in sanctioning through suppression because the phlebotomist collection of the defendant's urine was harmless. In People v. Bishop, a 2004 1st District case, which is the only case in Illinois to discuss section 1286.330, the appellate court determined that the sanction for an alleged violation of regulation is not automatic suppression, but rather the trial court should question whether the test results were reliable. If the alleged violation does not affect the reliability or accuracy of the test results, then the deviation does not warrant suppression.  by a trained and licensed medical professional, female phlebotomist, in a secure and private collection area, which was under guard by a state trooper, could render the test results unreliable or inaccurate. The people submit that if a trained phlebotomist is qualified to withdraw blood from a defendant and is qualified to conduct chemical testing of the defendant's blood, breath and urine under the direction of a licensed physician, then surely a trained phlebotomist is qualified to collect a sample of the defendant's urine. For these reasons, the people submit that the trial judge erred in finding that the urine collection did not comply with statutory and regulatory requirements, and the people would ask this court to reverse the trial judge's suppression order and remand the case for further proceedings. Are there any questions I cannot answer?  Thank you, Your Honors. Mr. Hamer? You may respond. May I please the Court?  I do agree with my opponent's statement of the standard of review. I believe it is a two-part standard. Trial court's findings, facts should be reviewed for clear error, and the review in court should only reverse those findings if they are against the manifest weight of the evidence. Legal rulings are reviewed de novo. We do have a very limited fact pattern in this situation, and the parties entered into a stipulation of facts that essentially outlined what happened here. Dolores Henrick, my client, is taken to Illinois Valley Community Hospital with the sole purpose of chemical testing. She is not undergoing any medical treatment whatsoever. Trooper Nichols, the arresting officer, filled out a non-consensual request for the testing. The other officer on the scene is, I believe, Sergeant Wakekiss. Both officers are males. Neither of these officers spoke with any physician at any time. Phlebotomist Maria Gugna took a blood draw, despite no order from a physician. It's sort of a side issue, but Maria Gugna, it's undisputed, is not one of those enumerated persons found at 28 Illinois Administrative Code 1286.330. Does she have to be? Does she have to be? Absolutely, Your Honor. Why is that? Well, the statutes sort of cross-reference each other, Well, can I focus on some language in that code provision? The following procedure shall be used under the preamble there before subparagraph A, and then it says a sample of urine shall be collected in a manner to preserve dignity, but then under B it says a urine sample may be collected. Is there any significance one should impart to the difference between shall and may? Well, certainly. I mean, typically shall indicates a mandatory intent. May would require probably no exceptions, right? I'm sorry, what was that? Shall says required, perhaps, in ordinary language in that there's no exceptions. It must be done that way, right? Well, typically it indicates mandatory intent, but not always. There are exceptions. I'll certainly, Well, how about may? May, of course. Yeah, I would say that may is directory. However, in this situation where we have the language of shall and may, you can consider that as ambiguous terms within the statute. I would submit that any ambiguity should be resolved in favor of the defendant. Well, but they deal with different subject matters. I'm sorry? They deal with different subject matters. Even though they're subparagraphs, they deal with different, Well, in the preamble it says shall be used in the, the following procedure shall be used, and then we go to paragraph B. It says the sample may be collected by these arresting officer, another law enforcement officer, agency employee, or hospital nurse who can authenticate the sample as long as they are the same sex as the subject undergoing the testing. And I think that it's very important that we stick to these enumerated persons because paragraph A, we do have the specific goals outlined. The stated purpose in paragraph A is two-part. A, preserve the dignity of the individual undergoing the testing, and B, to ensure the integrity of the sample. Now, how do we ensure those goals? By only allowing these certain specified persons to collect the urine sample. A phlebotomist has absolutely no training that I'm aware of in the manners of urine collection. What kind of training? What kind of training is required? That's an excellent question, Your Honor. I don't know, and I don't have that answer. But as we sit here, we don't have any idea what kind of training Maria Gugna ever underwent. She is a licensed phlebotomist. What course of study that entails, again, I couldn't get into specifics. But as we sit here, we have no idea whether Maria Gugna had ever been requested to collect a urine sample before. And we have no idea whether she collected one since. Well, if the officer collected the sample, would you be making the same argument? If it was a female officer? No, this officer. I would be arguing that that does not comply. So this officer was damned if he did, and damned if he directed a female to do it. I respectfully disagree. We have to think about the context where this happened. They're at Illinois Valley Community Hospital, and all it says is that these certain specified persons are authorized to collect the sample. We're at a hospital. I don't think it would have been too much to ask to simply have an officer track down a female nurse and say, you're a qualified, you're allowed a pursuant to code to collect the sample. Please do so. You assumed a conclusion there. You're saying authorized to. So that's not here, authorized. I mean, you're implying that this is an authorization, right? Well, I guess you're correct in saying it does not use the following persons are authorized. It says they need to collect. Right, right. Maybe. Correct, yeah. And I guess that is my inference. Right, right. But I think that these certain requirements are written for a reason and to hold otherwise would be to render. You're saying that only these people are allowed to collect and no others are allowed, right? Correct. And I think that, again, that goes to the specified purpose of ensuring that the person undergoing the testing, that their dignity is preserved. This is a very intrusive act where we're asking someone to urinate in front of a stranger while they're being monitored. I think that that does concern very serious issues of privacy and all that we're. . . But that's already been taken care of because it's gender, the same gender was complied by. That does satisfy. . . You're really going to, whether there's some specific training to be able to authenticate the sample. Well, the authentication. . . But I think that also there should be some sort of. . . What they contemplate is the person is qualified, is mature, is able to. . . They go to maybe take a stand and testify, competent to testify or attest to the fact that they saw certain acts that this bodily fluid emanated from this defendant. Certainly. That's about the extent of the authentication, isn't it? I would assume that would be the gist of the testimony. And that's really what we mean by authentication of the sample, isn't it? Someone who can satisfy that, yes, I did witness, this was collected in this manner, labeled properly, delivered, satisfied a chain of custody, all the way up to the testing done by the laboratory. Certainly. We need to ensure that these tests are going to be valid. So only an officer, agency employee, or nurse is your view of someone who is competent to do that? Certainly. And I think that if we were to, if this were to hold otherwise, we are talking about a very slippery slope. Suddenly we're going from a phlebotomist who has some training to a CNA, perhaps,  we have to draw a line, and I think that was the intent of saying these specific people may do so, because they have at least a minimum training to respect the privacy and respect the dignity of the person. But a phlebotomist is not just collecting the urine. She doesn't just pull your client out of the hallway and say, I want a urine sample. The officer directs that person to collect the sample and deliver it to him. Isn't he actually collecting it by enlisting the services of the female to preserve the dignity of your client? Is the officer actually collecting it? I don't know. By directing, selecting somebody to make the collection who happens to be a female gender. The officer did request that she perform this duty, whether or not that's collection or, I wouldn't really have an answer to that. But that phlebotomist would not have collected the urine but for the direction of the officer? Correct. So who's doing that? I understand your argument. I'm just not necessarily persuaded. And I think that counsel touched upon the question of whether or not the Department of State Police has authority to implement these particular standards. And I would direct the court to 20 Illinois Administrative Code 1286. It's the authority and general source authorized by Section 2605-15 of the Civil Administrative Code of Illinois. It says it's implementing Section 11-501.6 of the Illinois Vehicle Code. So I think that they're absolutely authorized to implement these certain standards. And that's what, in this situation, the Olson case discusses. There are situations where the legislature typically should write the law. But in this situation, the legislature said, the State Police is knowledgeable on the subject and we would like your guidance. And I think that Olson says that the legislature has the ability to delegate authority to execute the law, and the administrative agency essentially amounts to a tool in the hands of the legislature. And also I would submit that a close reading of Olson, it does not say only Section 11-501.2 is authorized. It says arguably. So I don't think they ever made the conclusion that counsel is offering. I think that following on the statute, and it is confusing, we go from 11-501.6, which is an accident involving a personal injury or death. We go from there, which references 501.1, has to do with statutory summary suspensions. 501.1 in turn references 501.2, which says that this testing must conform to these certain regulations, which then we get from there to the Illinois Administrative Code. And I think we're talking about 1286.330. Can you talk about substantial compliance with the rates? Is this or is this not substantially complied with because of the act? Well, I think that the 3rd District and the Supreme Court has held that strict compliance is the appropriate standard. I know that she's cited some cases, but I don't believe she's cited any 3rd District or Supreme Court cases. I cited People v. Miller, 3rd District. The trial court suppressed the results of chemical testing because they weren't provided in written format and they were not actually considered by the treating physician. At that time, the statute said that the results had to be in written format, be received, and considered by the physician. It didn't meet those criteria. Those results were suppressed. People v. Miller is another 3rd District case. I'm sorry, it's 219-113-246. I cited it in my brief as well. Miller involves a defendant who testifies he had chewing tobacco right before he did a breathalyzer, which is a violation of 77 Illinois Administrative Code 510.60. This court noted that the express purpose of that portion of the code is to prohibit ingestion of organic material prior to testing. The court found that defendant to be a credible witness, said that they met the burden and the state was unable to turn it back. Let me ask you something more specifically then. Assuming there is the application and it can apply, substantial compliance, why does this or does this not substantially comply? Right. Why does these facts not substantially comply? Well, I'm asking that's the position you would take. Sure. Well, I'm offering, of course, that strict compliance is the standard. I understand that. Sure, sure. Well, I think that we're, again, we're sort of balancing very important interests. We obviously have an interest in ensuring the safety of people on the roadway. Certainly, that's where the implied consent comes into play. However, we're not giving the police authority to just yank people out of a car and stick an eagle in their arm to test them. We have to meet certain criteria, and I think it's very important. We're talking about search and seizure, and it's very important that we protect those interests. In this situation, all we're really asking is that they abide by these very simple requests, these very simple standards, in that they have to be preserved to dignity, make sure it's someone who's able to authenticate the sample, and that it be taken by someone who has at least a basic training, not a phlebotomist. A phlebotomist doesn't have any training whatsoever with respect to this. With respect to urine collection. Correct. I mean, they're obviously listed under chemical analyses. Certainly, because they are specifically trained for the purpose of drawing blood. We're talking about collecting urine in this situation, of course. And even then, Your Honor, it does say that a phlebotomist, who actually has the training for that very purpose, still has to be under the direction of a physician. So even then, and I think maybe that you don't find that under a nurse, and I think that has to do with a phlebotomist has this level of training, and a nurse has so much more training. Are there any other questions, Your Honor? Thank you very much for your time. We're asking for all these reasons that you affirmed in the moment. Thank you. Thank you. Ms. Bargeman, you may reply. Can you help me again? Why isn't this strict compliance as opposed to substantial compliance? Well, the cases that were cited by the defendant, Your Honor, all involved either statutory requirements, such as Section 501. Okay, statutory requirements. Right, statutory requirements. Or those that did involve regulatory requirements had language stipulated in the regulation that said shall or must. In this case, the regulation at issue has language saying that this regulation is directed through its use of the word may. So how would this be substantial compliance? Because in substantial compliance, the real question is whether or not the reliability or the accuracy of the test results was affected with the collection of the urine. In this case, the stipulation of fact shows that the defendant went into a secure private collection area alone with only the phlebotomist. The phlebotomist was a trained and licensed medical professional, trained to withdraw blood. And while they collected the sample, the state trooper was guarding the outside of the restroom so no one could go in and out. The sample could not be switched with someone else. In that circumstance, in those facts, there is nothing to indicate that the test of that urine sample would then be unreliable. I would just briefly like to go back to the language within the regulation at issue. And the defense counsel, or the appellee, mentioned that this regulation is ambiguous between shall is sometimes used and may is sometimes used. However, at the very beginning of the regulation, it says the following procedures shall be followed, and then it does list eight procedures. However, the people like to point out that only the test Only one of those eight procedures uses the word may, and that is subsection B, which is the regulation at issue. Directly after that, the regulation states that of those persons listed, they shall be of the same sex. The use of the word may within the exact same regulation as the word shall indicates that the Director of Police knew what it was doing and that it was making subsection B directory rather than mandatory. And lastly, I would just like to point out the defendant... There's kind of a contradiction there. The first sentence says the urine sample may be collected, the second one, and lists the three people, and then the second sentence says the officer, agency employee, or nurse shall be of the same sex. I mean, they're referring to three categories of people. It's saying... And then... Go ahead. It's saying that of those persons that they listed, which people argue is not exclusive, of those persons listed, they must be of the same sex as the subject. Right, but they're referring to those same three categories of people who can take the sample. Correct. And you're saying it's not inclusive. What's the purpose of the second sentence? I mean, isn't there a problem with janitors coming up and finding a woman janitor, sending her to the bathroom with the defendant? Sure, if we want to follow a slippery slope. But the issue before the court today is whether this specific trained and licensed female phlebotomist was authorized to collect the defendant's urine sample. Under the appellate theory, anyone who's not listed in Regulation B cannot collect the defendant's urine. Well, that would exclude any doctor, licensed physician, or surgeon in the hospital. That's a problem, isn't it? Correct. Because this regulation is intended to be directory, to give guidance, if there's even authorization for the regulation, but it is not intended to be mandatory. Do you think that if it's a janitor's use, it could be a male janitor? I believe there would be a different issue before the court today if there was a male janitor who collected the urine sample. But given the facts of the case... Well, I mean, no. But I mean, under your interpretation, those three categories of people are, well, the essence is the statute of the right is directory. Those three categories of people are just examples of who can do it. There are others. But then the statute goes on to mandate that those three categories, at least, those three categories, children, perhaps, and even female, are of the same sex. Well, then we would look to, if we decided that this regulation is mandatory... Then we'd look back to Section A, would we not? Well, we would see if there was substantial compliance with that regulation and whether or not the test results could have been affected because this male custodian had collected the urine. However, in this case, the trained medical professional collected it in a secure area. The room was being guarded by a state trooper. The people would submit that it substantially complied with the regulation. Can't we view the occupation of the person collecting as being the directory language in the regulation, but the gender of the person is the mandatory application? That is correct. Gender is inflexible. Occupation, perhaps substantial compliance would apply. Correct. That's exactly what the people would submit. Your interpretation says that the second sentence would be the officer, agency, employee, or nurse shall be of the same sex actually means that it's mandatory that everybody be of the same sex. Correct. Even though it just lists those three people. Correct. But then the first sentence, which says male, and it references those three categories. Right. That is correct. Correct. I'm not sure I've thought of that, but if you have. Any further questions? I don't think so. Thank you. Thank you. Thank you, counsel, for your arguments this morning in this interesting matter. It will be taken under advisement.